NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

LARRY RICHARDSON,

    Plaintiff,

       v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil No. 12-6422 (RMB)

**OPINION**

**APPEARANCES**:

Robert Anthony Petruzzelli
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Amanda Lockshin
Elizabeth Rothstein
United States Attorney's Office
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorneys for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff Larry Richardson (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security (the "Commissioner")

denying his application for Disability Insurance Benefits

("DIB") and Social Security Supplemental Income ("SSI"). For the

reasons set forth below, the Court will vacate the decision of

the Commissioner and remand.

## I.  **Background**

### a) Procedural History

Beginning on July 23, 2008, Plaintiff filed applications

for DIB and SSI that alleged a disability onset date of March 2,

2007, due to Human Immunodeficiency Virus ("HIV") infection,

other arthropathies, a torn ligament in his left knee with bone

deterioration, and Hepatitis C.  (Administrative Record "R." 58-

61, 122-128, 142-160).  Plaintiff's claims were denied on

February 3, 2009, and upon reconsideration on July 23, 2009.

(R. 58-61).  Plaintiff then filed a Request for Hearing before

an Administrative Law Judge ("ALJ") on August 18, 2009 (R. 84-

86), and the hearing was held on May 28, 2011. (R. 25-57).  The

ALJ issued a decision denying Plaintiff's application for

benefits on July 18, 2011. (R. 14-24).  Plaintiff subsequently

filed a Request for Review by the Appeals Council on September

19, 2011, (R. 7-10), and the Council denied that request on

September 14, 2012 (R. 1-6).  Thus, the decision of the ALJ

became the final decision of the Commissioner.  Plaintiff filed

his appeal of the final decision with this Court on October 12, 2012.

b) <u>Hearing Testimony</u>

At the ALJ hearing, Plaintiff was represented by counsel and testified that he is a 48-year-old male with some high school education. (R. 32-33). Plaintiff has previously worked in a slaughter house, seasonally in a farmhouse, as a laborer for wood fabrication, and in temporary employment sorting mail. (R. 33-35). Plaintiff has Hepatitis C and HIV and first started feeling pain in 2004 when he "stopped drinking and doing drugs." (R. 37). Plaintiff has not had any other jobs since 2007 and stated that he had to stop working as a mail sorter because he could not "keep up with" the walking back and forth that the job required. (R. 34—36). He also stated that he suffers from shortness of breath "all the time." (R. 54). Plaintiff previously had a cerebral aneurism, and prior to the ALJ hearing, he had a CAT scan and balance tests because of dizziness; he testified that he takes medicine that makes him dizzy and has caused him to pass out. (R. 38-40). Plaintiff also stated that he takes muscle relaxers, sleeping pills, medication for arthritis, low testosterone, and medication for HIV. (R. 50-51). These medications give Plaintiff dry mouth and, as a result, he drinks a lot of water and needs to urinate every fifteen to twenty minutes (R. 52-53).

Plaintiff stated that he is being treated by Dr. Denise Scaringe-Dietrich ("Dr. Dietrich") because his "whole body burns." (R. 36). He also stated that his neuropathy causes him to feel the sensation of "needles poking" him in his hands, thumbs and throughout his body, which prevents him from using a cane. (R. 41). With respect to his activities, Plaintiff stated that he can walk three blocks at a slow pace and then has to stop. (R. 41). Plaintiff takes eight muscle relaxers a day because "everything just tightens up" when he sits too long and that he can only sit for twenty minutes to half-an-hour. (R. 45-46). He can carry one bag of groceries. (R. 47-48). On a regular day, he wakes, showers, and fixes himself breakfast. (R. 52). He tries to sleep an hour during the day as he testified that he is unable to sleep at night. (R. 52). Plaintiff testified that he tries to read but gets dizzy and suffers from low energy, forgetfulness and loss of concentration. (R. 53 & 55).

   c) The ALJ's Decision

   Applying the requisite five-step analysis,[1] the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since March of 2007. (R. 16-18). The ALJ

---

[1] Described on pages 12-13 infra.

determined that Plaintiff has the severe impairments of
asymptomatic HIV, Hepatitis C, and neuropathy. (R. 16-18).  In
making this finding, the ALJ opined that Plaintiff's other
complaints such as "pain in his bones" are "not adequately
supported by the medical record" and that the "record does not
substantiate the extent of the claimant's allegations." (R. 16-
17).  The ALJ stated that Plaintiff has had trouble with his
lower extremities and the medical record shows subjective
complaints of pain in 2008, 2010 and 2011, but that the record
"does not correlate the pain with positive objective tests."
(R. 17).  Instead, such complaints were consistent with
peripheral neuropathy as diagnosed by Plaintiff's most recent
treating physician. (R. 17).

Relying heavily on the findings of Dr. Jorge Hernández-
Denton, (R. 729-738), an impartial medical expert who reviewed
Plaintiff's entire medical record, the ALJ noted that Dr.
Hernández-Denton's opinion was given "great weight," including
his findings that there was neither "objective medical evidence
support for the claimant's complaints of generalized pain, upper
extremity pain, pulmonary restrictions or musculoskeletal
disorders" nor "support for the fibromyalgia diagnosis." (R.
17).  The ALJ did, however, find that the objective evidence
showed osteopenia and, with respect to Plaintiff's left knee
impairment, he allowed Plaintiff "the benefit of the doubt as to

the limitations the pain could cause." (R. 17-18).  The ALJ

noted that Plaintiff's spirometry results showed "mild

obstructive disease, which markedly improved with

bronchodilators" and, as such, Plaintiff was found not to have

any significant vascular or respiratory impairment. (R. 18).

Moreover, the ALJ found that while Plaintiff alleged that his

impairments cause him disabling pain, and Plaintiff began taking

"multiple painkillers" in October 20110, that "the treatment

record does not document such extreme pain." (R. 18).

Based on the above, and relying primarily on the opinion of

Dr. Hernández-Denton, the ALJ determined that these impairments

did not meet with criteria for listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  Furthermore, based on the

above findings, and considering Plaintiff's allegations of the

intensity, persistence and functionally limiting effects of his

pain, which the ALJ found to be unsubstantiated by objective

medical evidence, (R. 20), the ALJ determined that Plaintiff had

the following residual functional capacity:

- He could lift and carry 10 lbs frequently and 20 lbs
  occasionally;
- He could sit for 6 hours in an 8 hour workday and
  stand or walk for 2 hours in an 8 hour workday given
  the option to alternate between positions at will; and
- He does not have any restrictions to performing
  repetitive hand movements. (R. 19).

The ALJ predicated his findings on the following medical determinations:

- Plaintiff's primary podiatrist who noted that 80% of Plaintiff's walking pain had improved with orthotic therapy. (R. 20).

- The RFC assessment by Dr. Hernández-Denton as he found Dr. Hernández-Denton's opinion to be consistent with the findings of "the consulting evaluator, by the treating physicians, and by the record as a whole." (R. 20).

- The findings of Dr. Soloway, who examined Plaintiff on September 11, 2008, and determined that despite Plaintiff's complaints of pain, there were no "constitutional symptoms, muscle weakness or shortness of breath," and instead found only "some joint tenderness and low grade inflammation." (R. 20).

- The findings of Dr. Lightfoot that Plaintiff had no neurological or musculoskeletal deficit; Dr. Amori who noted normal muscle tone, strength, and reflexes; and Dr. Judge, who noted no joint tenderness or deformities. (R. 20-21).

Furthermore, with respect to the RFC, the ALJ relied heavily on the findings of Dr. Khona, the consultative orthopedist, who, the ALJ found, "provided the most detailed examination of record" but did not find any "positive physical findings despite a multitude of complaints." (R. 21). Dr. Khona examined Plaintiff on January 22, 2009. (R. 463). The ALJ stated that:

Great weight is given to the findings and opinions of Dr. Khona. Dr. Khona's findings are consistent with the findings by the treating physicians and with the medical record as a whole, even more so, Dr. Khona provided the most detailed examination. During Dr. Knona's examination,

7

the claimant reported a functional capacity that directly
contradicts his allegations [given] as part of the
application. Greater weight is afforded to the information
claimant's [sic] is given to Dr. Khona than to his
allegations because his current allegations are unsupported
by the medical evidence.

(R. 21).

The ALJ further found that on March 7, 2011, Plaintiff

reported overall improvement and held that Dr. Dietrich lacked

substantial findings; her opinion was given "little weight"

because it "is based on the claimant's subjective complaints and

is not substantiated by the medical evidence of record." (R.

22). The ALJ also found that Plaintiff's statements regarding

the "intensity, persistence and limiting effect of [his]

symptoms are not credible [and] [t]hey are inconsistent with the

. . . residual functional capacity assessment." (R. 22).

After performing the RFC assessment, the ALJ determined

that Plaintiff was unable to perform any past relevant work. (R.

22). Then, considering Plaintiff's age, education, work

experience, and RFC as determined, the ALJ found that there were

jobs in significant numbers in the national economy that

Plaintiff could perform. (R. 22). In making this finding, the

ALJ relied on a vocational expert ("VE"), who had been asked to

determine "whether jobs exist in the national economy for an

individual with the claimant's age, education, work experience

and residual functional capacity." (R. 23). The VE found that

Plaintiff would be able to perform jobs in "Production Occupations, which have an incidence of 31,460 jobs in the Salem, New Jersey regional economy and 9,919,120 jobs in the national economy." (R. 23). Consistent with the VE's testimony and in consideration of other factors of age, education, work experience, and RFC, the ALJ concluded that a Plaintiff was "not disabled." (R. 23).

## II.  **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r of Soc. Sec., 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984);

<u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (quoting <u>Arnold v. Sec'y of Health, Ed. & Welfare</u>, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); <u>see also Guerrero v. Comm'r of Soc. Sec.</u>, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), <u>aff'd</u>, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," <u>Burnett v. Comm'r of Soc. Sec.</u>,

220 F.3d 112, 122 (3d Cir. 2000). <u>See</u> <u>also</u> <u>Fargnoli</u>, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. <u>See</u> <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. <u>Sykes</u>, 228 F.3d at 262 (citing <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not

only unable to do his previous work but cannot,
considering his age, education, and work experience,
engage in any other kind of substantial gainful work
which exists in the national economy, regardless of
whether such work exists in the immediate area in
which he lives, or whether a specific job vacancy
exists for him, or whether he would be hired if he
applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

In step one, the Commissioner must determine whether
the claimant is currently engaging in substantial
gainful activity. 20 C.F.R. § 1520(a). If a claimant
is found to be engaged in substantial activity, the
disability claim will be denied. Bowen v. Yuckert, 482
U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether
the claimant is suffering from a severe impairment. 20
C.F.R. § 404.1520(c). If the claimant fails to show
that [his] impairments are "severe," [he] is
ineligible for disability benefits.

In step three, the Commissioner compares the medical
evidence of the claimant's impairment to a list of
impairments presumed severe enough to preclude any
gainful work. 20 C.F.R. § 404.1520(d). If a claimant
does not suffer from a listed impairment or its
equivalent, the analysis proceeds to steps four and
five.

Step four requires the ALJ to consider whether the
claimant retains the residual functional capacity to
perform [his] past relevant work. 20 C.F.R.
§ 404.1520(d). The claimant bears the burden of
demonstrating an inability to return to [his] past

relevant work. <u>Adorno v. Shalala</u>, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. <u>See</u> 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. <u>See</u> <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984).


III. <u>**Analysis**</u>

a) <u>ALJ's Finding of Severity at Step Two</u>

Plaintiff first argues that the ALJ erred by not properly considering Plaintiff's fibromyalgia and myofascial spasms and pain as "severe" impairments at step two of the Sequential Evaluation Process.  The ALJ, however, did find in Plaintiff's favor at step two, holding that Plaintiff suffered from the severe impairments of "asymptomatic HIV, hepatitis C and neuropathy." (R. at 16-18). Thus, "even if [the ALJ] had erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless."  <u>Salles v.</u>

<u>Comm'r of Soc. Sec.</u>, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)(citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005)).  Thus, remand is not warranted on these grounds. <u>See</u> <u>Williams v. Comm'r of Soc. Sec.</u>, No. 12-5637, 2013 U.S. Dist. LEXIS 118525, at *48 (D.N.J. Aug. 21, 2013)(finding that remand was not warranted to reconsider the step two determination as any error regarding a severe impairment determination was harmless).

   b) <u>The Opinion of the Plaintiff's Treating Physician</u>

     Plaintiff asserts that the ALJ improperly dismissed Dr. Dietrich's opinion that he is disabled for at least 12 months and that Plaintiff "cannot work and can only ambulate with difficulty due to pain." (R. 709-28).  Dr. Dietrich's clinical evaluations were based on seeing the Plaintiff on several occasions between October 17, 2010 and March 7, 2011. (<u>Id.</u>).  On November 11, 2010, Dr. Dietrich diagnosed Plaintiff with leg pain, neuropathy, low back pain, myofasical pain and found that Plaintiff had work limitations with respect to standing, walking, climbing and bending.  (R. 709-10).  Dr. Dietrich's notes from March 7, 2011 noted that Plaintiff reported pain as a 10 on a 10 point scale, though noted he was "not a good historian."  (R. 711-12).  Dr. Dietrich found that Plaintiff appeared "mildly distressed due to pain" had decreased range of

motion in his ankles "due to spasm" and that his extremities were "tender to palpation over the pretibial area and bilateral peroneal area." (R. 712-713). Based on her exam she entered a diagnosis of leg pain, arthritis, fibromyalgia, myofascial spasm, and neuropathy. (R. 713).

Plaintiff argues that Dr. Dietrich's evaluations are supported by the evaluation of Dr. Lightfoot in 2008, who noted abnormal findings of bone and joint pain as well as weakness and limited activities of daily living. (R. 501). In addition, Dr. Lightfoot noted in July of 2010 that, while Plaintiff did not have muscle weakness, he did suffer from neuropathic pain and she recommended a change in Plaintiff's occupation from his prior work due to "chronic pain and peripheral neuropathy." (R. 274-277). At that time, Dr. Lightfoot did not find any specific limitations with respect to Plaintiff's standing, walking, lifting, or the like. (R. 276).

In her opinion, the ALJ relied most heavily on the findings of Dr. Hernández-Denton and Dr. Khona. As stated above, Dr. Hernández-Denton never examined Plaintiff and instead did a one-time evaluation of his medical records, finding that, <u>inter alia</u>, Plaintiff:

- Could lift 10 lbs frequently and 20 lbs occasionally;
- Could sit 6 hours in an 8 hour workday;
- Did not need a cane to ambulate; and
- Could use both hands frequently for reaching, handling, and fingering.

15

(R. 729-734).  Similarly, Dr. Khona, who examined Plaintiff in January of 2009, found that Plaintiff had normal upper and lower extremities and that "claimant had no positive physical findings," even though "[h]e had a multitude of complaints of aches and pains." (R. 463-464).

An ALJ must consider every medical opinion and decide how much weight to give the opinion. 20 C.F.R. § 404.1527(c).  The ultimate decision about whether a plaintiff is disabled is reserved for the Commissioner. 20 C.F.R. § 404.1527 (d) & (d)(1). "[T]reating source opinions on issues that are reserved to Commissioner are never entitled to controlling weight or special significance." SSR-96-5p, 1996 SSR LEXIS 2; see also 20 C.F.R. § 404.1527(d)(3).

An ALJ must, however, accord "treating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal citations omitted).  The ALJ must also consider the findings and opinions of state agency medical consultants and other sources consulted in connection with ALJ hearings. 20 C.F.R. § 404.1527(e)(2)(i). If non-examining medical source opinions are supported by medical evidence in the record, they may constitute substantial evidence and override a

treating physician's opinion. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer, 186 F.3d at 429 (internal citations omitted). An ALJ errs by failing to address evidence in direct conflict with his findings. Landeta v. Comm'r of Soc. Sec., 191 F. App'x. 105, 110 (3d Cir. 2006).

There is certainly conflicting medical evidence in this case, and, as stated above, where a conflict exists, the ALJ may choose whom to credit, but must give reasons for discounting rejected evidence. Plummer, 186 F.3d at 429. Plaintiff correctly points out, however, that the Commissioner seeks to bolster the ALJ's determination by relying on medical evidence not expressly considered by the ALJ – i.e., the reports of Dr. Rampello and Dr. Golish. (Comm'r Br. at 11-12). Because there is no mention of the reports of Dr. Rampello or Dr. Golish by the ALJ, this Court cannot hold that the ALJ relied on their evaluations as substantial evidence in support of her findings. See Pearson v. Barnhart, 380 F. Supp. 2d 496, 506 (D.N.J. 2005) (stating that the court will not make factual determinations on

behalf of an ALJ where the ALJ fails to cite specific medical facts).

While the ALJ cites Dr. Lightfoot's findings as support for her decision to discount Dr. Dietrich's opinion (R. 20-21), she fails to address Dr. Lightfoot's findings which support Dr. Dietrich's findings – i.e., chronic pain, bone pain, and limitations in daily living. (R. 277, 501).  Moreover, with respect to Dr. Dietrich's records, the ALJ incorrectly states that "[o]n the last evaluation on the record, dated March 7, 2011, the claimant reported overall improvement." (R. 21). Instead, Plaintiff reported some improvement on January 31, 2011, (R. 714), and on March 7, 2011, the last recorded evaluation, Plaintiff described his pain as "shooting" and a "10 on a 10 point scale."  (R. 711-714).  Additionally, the ALJ fails to discuss the fact that she relies heavily on less recent medical records to substantiate her findings – e.g., Dr. Khona last saw Plaintiff in January of 2009, whereas Dr. Dietrich made her findings based on examining the Plaintiff over two years later.  January 2009 findings, however, are not as probative of 2012 health.  See Egan v. Astrue, No. 10-5150, 2011 U.S. Dist. LEXIS 149675, at *14 (D.N.J. Dec. 29, 2011)(finding that "2006 health data is not, as a general matter, probative of 2008 health.").

The ALJ should re-visit these inconsistencies on remand and more clearly state her reasoning for discounting the opinion of Dr. Dietrich, if that is again her finding in light of her examination of all relevant evidence. [2] See Williams, 2013 U.S. Dist. LEXIS 118525, at *40 (finding that the ALJ erred by failing to discuss all medical evidence that supported the decision of claimant's treating physician).

### c) Plaintiff's RFC and His Subjective Limitations

This Court will consider together Plaintiff's arguments that the ALJ failed to properly weigh all of Plaintiff's impairments in determining Plaintiff's Residual Functional Capacity ("RFC") and whether the ALJ properly discounted Plaintiff's testimony regarding his disabling pain and limitations.

RFC is what a person is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a) and 416.945. Social Security Ruling 96-8p ("SSR" 96-8p), dictates that the RFC assessment is a "function-by-function

---

[2] Based on the record as a whole, the ALJ may very well determine again that Dr. Dietrich's findings are belied by the objective medical evidence. That said, remand is warranted, nevertheless, as it is the duty of the ALJ to consider every medical opinion, 20 C.F.R. § 404.1527(c), support her conclusions with substantial evidence and give clear reasons why she rejects any particular evidence. See Plummer, 186 F.3d at 429.

assessment based upon all the relevant evidence of an individual's ability to do work related activities." SSR 96-8p. In order to meet the requirements of 96-8p, the ALJ "must 'specify the evidence that he relied upon to support his [or her] conclusion.'" <u>Pearson</u>, 380 F. Supp. 2d at 506 (citation omitted). Moreover, "the ALJ's residual functional capacity assessment must 'be accompanied by a clear and satisfactory explanation of the basis on which it rests.'" <u>Id.</u> (quoting <u>Fargnoli</u>, 247 F.3d at 41).

In addition,

[T]he ALJ is required to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 SSR LEXIS 5. Moreover, such a discussion must be made by the ALJ in narrative form, "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5.

<u>Pearson</u>, 380 F. Supp. 2d at 505-06. Here, Plaintiff argues that the ALJ failed to engage in a proper function-by-function assessment that considered both Plaintiff's severe and non-severe impairments, including fibromyalgia, myofascial pain, osteopenia, osteoarthritis in the knees, and breathing problems. Plaintiff further argues that the ALJ failed to consider

sustained work activities as required – i.e., 8 hours a day, 5 days a week.

First, for reasons stated above, with respect to the ALJ's finding on the medical records, this Court will remand as to the Plaintiff's RFC determination. On remand, the ALJ may give different weight to the findings of Plaintiff's treating physician, which would, in turn, impact the RFC.[3] For purposes of this analysis, this Court finds that, because there are outstanding issues to address on remand with respect to the ALJ's treatment of the treating physician's report, the ALJ will also need to re-examine the RFC determination.[4] <u>Weinsteiger v. Astrue</u>, 09-1769, 2010 U.S. Dist. LEXIS 5971, at *24 (E.D. Pa. Jan. 5, 2010)("In light of the court's recommendation that the case be remanded to the Commissioner for further consideration of the treating physician evidence, this court further recommends that upon remand, the Commissioner reevaluate plaintiff's RFC.").

---

[3] Dr. Dietrich found that Plaintiff had limitations as to standing, walking, bending, etc. (R. 710).

[4] While the ALJ did not expressly state whether Plaintiff could perform the RFC functions on a regular and continuing basis, this alone is not a basis for remand. Because "the RFC <u>is</u> 'the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis,' SSR 96-8p, 1996 SSR LEXIS 5, there [i]s no need for the ALJ to make a separate finding" where the decision is supported by substantial evidence. <u>Bogar v. Comm'r of Soc. Sec.</u>, No. 08-1871, 2009 U.S. Dist. LEXIS 51923, at *33 n.11 (D.N.J. June 18, 2009).

Related to the function-by-function argument is Plaintiff's contention that the ALJ failed to adequately consider Plaintiff's subjective complaints. More specifically, Plaintiff points to record evidence that supports his contention of pain and weakness, including the report of Dr. Lightfoot (R. 501). He also points to an absence in the ALJ's opinion of any discussion regarding the side-effects of Plaintiff's medications, his hand pain, and his need to use the bathroom frequently.

"An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). "Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Id. at 1067-68 (citations omitted). Nevertheless, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." Fargnoli, 247 F.3d at 43.

This Court agrees with Plaintiff that the ALJ failed to adequately discuss Plaintiff's subjective complaints. Even though Plaintiff testified during the hearing that he could not

sit too long because "everything just tightens up and then I'm really no good for nothing [sic]" and that, as a result, he could only sit for twenty minutes to half-an-hour, (R. 45-46), the ALJ, without explanation, stated that Plaintiff "has no difficulties sitting and can sit for long periods of time." (R. 20).

Additionally, the ALJ's opinion is devoid of any discussion of the side-effects of Plaintiff's medications – particularly dizziness. This is puzzling in light of the fact that the ALJ and Plaintiff discussed his dizziness at length during the hearing, (R. 30, 39-41, 46-48, 51-53), yet there is no mention of this side-effect in the ALJ's opinion whatsoever.

Moreover, the ALJ summarily dismissed Plaintiff's statements concerning the "intensity, persistence and limiting effects" of his pain as "not credible" because "[t]hey are inconsistent with the above residual functional capacity." (R. 22). Although this conclusion may ultimately be reached under a more thorough analysis, the ALJ failed to adequately address the conflicting evidence in the record, including the findings of Dr. Dietrich and Dr. Lightfoot. It is the responsibility of the ALJ to weigh the evidence and make determinations on contradicting evidence. Rodriguez-Pagan v. Comm'r Soc. Sec., No. 10-4273, 2011 U.S. Dist. LEXIS 105425, at *45-46 (D.N.J. Sept. 16, 2011).

If the ALJ changes her determinations with respect to Dr. Dietrich's report on remand and Plaintiff's subjective complaints, including his inability to sit for prolonged periods and his medication side-effects, which were not discussed by the ALJ, her analysis may be significantly affected.[5]  Thus, this Court remands this case for further discussion on these issues as related to Plaintiff's RFC and the credibility of his subjective limitations.  See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

d) Vocational Evidence

At step five of the required analysis, the ALJ is required to demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f).  In this matter, the ALJ consulted a Vocational Expert ("VE"), who completed interrogatories after reviewing the

---

[5] The reverse is also true; again, the ALJ may ultimately determine that Plaintiff is not disabled after considering Plaintiff's subjective complaints and medication side-effects in formulating Plaintiff's RFC and completing the requisite five-step analysis.

evidence of record. (R. 323-28). The VE was posed a
hypothetical that described a younger individual, with a limited
education, Plaintiff's work experience, and an RFC as determined
by the ALJ. (R. 325). The VE found that Plaintiff would be able
to perform jobs in "Production Occupations, which have an
incidence of 31,460 jobs in the Salem, New Jersey regional
economy and 9,919,120 jobs in the national economy." (R. 23).
Consistent with the VE's testimony and in consideration of other
factors of age, education, work experience, and RFC, the ALJ
concluded that a Plaintiff was "not disabled." (R. 23).

Plaintiff argues that ALJ erred by relying on an erroneous
assumption made by the VE – i.e., that the Plaintiff would be
able to alternate positions of sitting and standing at will, (R.
325), and that there exists a large number of jobs that permit a
sit/stand option at will because SSR 83-12 states, in relevant
part, that "[u]nskilled types of jobs are particularly
structured so that a person cannot ordinarily sit or stand at
will." Plaintiff reads SSR 83-12 in combination with SSR 00-4,
which provides that "SSA adjudicators may not rely on evidence
provided by a VE . . . if that evidence is based on underlying
assumptions or definitions that are inconsistent with our
regulatory policies or definitions." Thus, Plaintiff argues,
the VE's determination that there are nearly 10 million jobs
that Plaintiff can perform with a sit/stand option is in

conflict with Agency's ruling that this is an unusual circumstance and, thus ALJ cannot rely on it.

This Court finds that remand is not warranted simply because the VE found there were jobs in significant numbers that Plaintiff could perform even with the need for a sit/stand option.  See Martin v. Barnhart, 240 Fed. Appx. 941, 945-46)(3d Cir. 2007)(finding that an ALJ's step five determination was supported by substantial evidence where a VE was consulted who determined there existed significant jobs even with a sit/stand limitation).  That said, however, if the RFC determination changes on remand, the ALJ will then need to reexamine her conclusion as to whether work exists in significant numbers in the national economy given Plaintiff's impairments, age, education and past work experience.  See Sylvester v. Astrue, No. 10-1012, 2011 U.S. Dist. LEXIS 11100, *46-48 (W.D. Pa. Feb. 4, 2011)(discussing the need for reexamination at step five if the ALJ changed the RFC determination on remand).  Then, the ALJ would need to post a hypothetical to the VE that reflects Plaintiff's impairments as supported.  Id. at *47-48.

## IV.  Conclusion

While the Plaintiff avers that an award of benefits is warranted without remand, for the reasons stated above, this

Court will vacate the Commissioner's final decision and remand for further proceedings consistent with this Opinion.  An accompanying Order will issue this date.


                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge

Dated October 29, 2013